## TEXAS INDEMNITY INS. CO. v. PRESLAR et al. (No. 291.)

Court of Civil Appeals of Texas. Eastland. June 24, 1927.

Rehearing Denied Oct. 14, 1927.

**1. Master and servant ☞372—"Proximate cause" must be contributing cause without which employee's injury would not have occurred (Rev. St. 1925, art. 8309).**

"Proximate cause" of an injury, which, under Rev. St. 1925, art. 8309, does not include injury caused by act of God, unless employee is subjected to greater hazard therein than ordinarily applies to public generally, is not restricted to the sole cause, nor need it be the cause nearest in point of time to the accident, but it must be a contributing cause without which the injury would not have occurred.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**2. Master and servant ☞373—Finding that conditions of derrick were not proximate cause of injury negatived predicate that sunstroke hazard was increased by working conditions.**

In action to set aside decision of the Industrial Accident Board denying compensation for death of an employee by sun or heat stroke, finding of the jury that employee's death was not proximately caused by conditions of the oil derrick in which he was working negatived predicate that hazard of sunstroke or heat prostration was materially increased by the conditions under which he worked and not applicable to the public generally.

**3. Master and servant ☞373—Heat stroke hazard, increased by nature and character of work, was not excluded from injuries compensable, under statutes (Rev. St. 1925, art. 8309).**

If nature and character of the work and surrounding circumstances attending deceased while working in an oil derrick increased the hazard of sun or heat stroke, then it was proximate cause of injury and was not excluded by Rev. St. 1925, art. 8309, from list of compensable injuries.

**4. Appeal and error ☞1129—Court of Appeals is unauthorized to affirm judgment trial court was without power to enter.**

The Court of Civil Appeals cannot affirm a judgment rendered notwithstanding verdict which the trial court was powerless to render.

**5. Evidence ☞570—Jury is not in all cases bound by opinion testimony of experts.**

The jury is not in all cases bound by the opinion testimony of experts.

**6. Evidence ☞554 — Physician, after having had detailed to him facts in evidence, could testify what causes of death resulted therefrom.**

Physician, after having detailed to him facts in evidence, could testify as an expert what causes of death could or would result from such state of facts.

**7. Trial ☞412—Error in hypothetical question in omitting whether employee dying from heat stroke used ice water was cured by cross-examination, in which witness' opinion was not changed.**

In action for death of an employee by heat stroke, error in hypothetical question to physician as an expert which omitted fact of employee's use of ice water was cured by cross-examination, in which witness' attention was called to fact that deceased drank ice water shortly before being stricken and witness' statement that he did not change his opinion.

Hickman, J., dissenting in part.

Appeal from District Court, Eastland County.

Suit by Mrs. Cora Preslar and others against the Texas Indemnity Insurance Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Conner & McRae, of Eastland, for appellant.

Grisham Bros., of Eastland, and Davis, Johnson & Carter, of Dallas, for appellees.

PANNILL, C. J. Mrs. Cora Preslar for herself and in behalf of her minor children, and joined by her married daughter, Mrs. Wright, and her husband brought this suit to set aside the decision of the Industrial Accident Board denying compensation for the death of Sanford Preslar, husband and father of the appellees named, and to recover such compensation from the appellant, compensation insurer for the Magnolia Petroleum Company. The allegations are that the deceased, Sanford Preslar, while working for the Magnolia Petroleum Company on August 28, 1924, engaged in pulling tubing, was exposed to the direct heat of the sun and on a very hot, clear day suffered an injury caused by heat prostration, resulting in his death; that the work in which deceased was engaged was very arduous; that, at the place where he was at work, the radiation and reflection of such heat was increased by iron pipes, machinery, metal, and other structures, which materially increased the hazard to which the deceased was subjected on account of such excessive heat to a greater degree than ordinarily applies to the general public; and that the injury and death of the deceased resulted proximately from such exposure and work under the conditions named. Further allegations were made, showing a right of recovery in the appellees, and a compliance with the Employer's Liability Act with reference to filing the claim, and a proper appeal from the judgment of the Industrial Accident Board denying appellees an award.

The cause was submitted upon special issues, which, with the answers of the jury thereto, established the following:

That Sanford Preslar suffered an injury while working for said company, to wit,

overheat, resulting in damage to his physical structure, causing his death; that the injury originated in and was connected with his employment, and was occasioned while said Preslar was engaged in the performance of his duties; that his death was neither directly nor proximately caused by the conditions of the derrick in which he was working at the time of his death; that his death was not caused by the use of ice water.

Upon the return of the verdict as noted, appellees moved for judgment, which motion was granted by the court and judgment rendered in favor of appellees, from which this appeal is prosecuted.

The points raised by appellant and which are considered material are (1) that no judgment could be lawfully rendered for the appellees on the verdict of the jury on account of the finding by the jury that the condition of the derrick in which the deceased was at work was not the proximate cause of his injury; (2) that the uncontradicted evidence was that the death of the deceased resulted from an act of God, and not compensable under our Employer's Liability Act; (3) that the evidence is insufficient to sustain a finding of the jury that Sanford Preslar died of overheat or heat prostration; (4) that there was error in the admission of the testimony of appellees' witness, Dr. Payne, in answer to a hypothetical question propounded him by appellees. These propositions will be discussed in more or less detail in disposing of the appeal.

It is provided in article 8309, R. S. 1925:

"The term 'injury sustained in the course of employment,' as used in this law, shall not include:

"1. An injury caused by the act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public."

This statute adopts the rule announced by a majority of the cases dealing with the construction of the Employer's Liability Act, as shown by the annotations in 13 A. L. R. 974, 16 A. L. R. 1038, 25 A. L. R. 146, and 40 A. L. R. 400, and as announced by our own Supreme Court in the case of Cassell et al. v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S. W. 127, 46 A. L. R. 1137. The construction of this statute has been applied in but one case called to our attention, and that is the case of United States Fidelity & Guaranty Company v. Rochester (Tex. Civ. App). 281 S. W. 306. This decision was affirmed by the Supreme Court by memorandum opinion in 115 Tex. 404, 283 S. W. 135, on the ground that the decision is correct under the rules announced in the Cassell Case.

In Cassell v. U. S. Fidelity & Guaranty Co., the statement is made:

"In short, the accepted test which the English courts have tried to follow seems to have been, Did the injury occur from exceptional exposure to danger incurred through performance of the employee's duty? * * * Our statutes, in requiring that an injury in order to be compensable, must be one other than those specifically enumerated and one 'having to do with and originating in the work,' have in effect adopted the requirement of the English and of most American acts that the injury 'arise out of the employment.' "

In applying the rule announced it seems to be quite generally held that an injury, to be compensable, must be proximately caused by the employment. Larke v. Hancock Mutual Life Ins. Co., 90 Conn. 303, 97 A. 320, L. R. A. 1916E, 586, 587; Joliet v. Commission, 291 Ill. 555, 126 N. E. 618; McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306; Dougherty's Case, 238 Mass. 456, 131 N. E. 167, 16 A. L. R. 1039; Texas, etc., Co. v. Jimenez (Tex. Civ. App.) 267 S. W. 752.

In Lewis' Case, 178 Wis. 449, 190 N. W. 101, 25 A. L. R. 139, it is said that if the exposure to sunstroke at the time and place of the injury was not different substantially from that of other out of door work, no award is allowed. See, also, Townsend, etc., Co. v. Taggart, 81 Ind. App. 610, 144 N. E. 556; Skelley Oil Co. v. Commission, 91 Okl. 194, 216 P. 933.

In Dougherty's Case, 238 Mass. 456, 131 N. E. 167, 16 A. L. R. 1036, it is said:

"If the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment."

In McNicol's Case, supra, it is said:

"It (the injury) 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. * * * The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

[1, 2] It would seem from a reading of the cases dealing with injuries caused by the elements that the recovery must be predicated upon a causal connection between the hazard and the employment, and this is proximate cause. Proximate cause is not restricted to the sole cause, nor need it be the cause nearest in point of time to the accident, but it must be a contributing cause without

which the injury would not have occurred. Pennsylvania Co. v. Congdon, 134 Ind. 226, 33 N. E. 795, 39 Am. St. Rep. 251. It seems that it is not necessary for the term "proximate cause," as applied to compensation cases, to include a further element of the injury being within the contemplation of the master, or such as should have reasonably been foreseen as shown in the quotation made above and as held by our own courts in the case of Travelers' Ins. Co. v. Smith (Tex. Civ. App.) 266 S. W. 574, and Georgia Casualty Co. v. Little (Tex. Civ. App.) 281 S. W. 1092. The conclusion is inescapable that the findings by the jury noted above, that the conditions of the derrick were not the proximate cause of the injury suffered by the deceased, negative the necessary predicate for recovery by the appellees, to wit, that the hazard of sunstroke or heat prostration was materially increased by the conditions under which the deceased was working, and not applicable to the public generally.

Appellees plausibly urge that under our Compensation Law the question of proximate cause is no longer a necessary element for a recovery, and base this insistence upon Travelers' Insurance Company v. Smith and Georgia Casualty Company v. Little, cited above. These cases hold that it is not necessary for the consequences of the injury to be the natural and probable result thereof, as is required by the doctrine of proximate cause as generally applied, and this is all they do hold.

[3] Appellees also rely on Insurance Co. v. Moore (Tex. Civ. App.) 279 S. W. 516, and Tex., etc., Co. v. Jimenez, cited above, as supporting their contention, but these decisions rather support appellant, in that there was a finding in each case that the circumstances surrounding the employee and arising out of his employment were the proximate cause of the injury. As will be noted, the court did not submit the issue to the jury in the terms of the statute, but followed the pleading of the appellees. The allegations set out above in pertinent terms aver that the surroundings at the derrick where deceased was at work and where he received his injury materially increased the hazard of an injury from heat prostration, and that this increased hazard was the proximate cause of his injury. Appellees did not object to the submission by the court following their allegations. Appellees, then, at the time the petition was drawn and at the time the case was submitted, evidently had the view that, if the nature and character of the work and surrounding circumstances attending the deceased increased the hazard to which he was subjected from an act of God, then this would be proximate cause of the injury suffered by him, and we think this is correct. It would probably have been better to have submitted the case to the jury in the language of the statute and as was done in U. S. Fidelity & Guaranty Company v. Rochester, supra, but the submission in this form by appellees was not requested. It is further insisted by appellees that the conditions of the derrick at which he was at work constituted but one element entering into the situation. That the finding by the jury that the injury was not proximately caused by the conditions of the derrick in no way militates against the other findings of the jury as noted. That the jury having found the injury to have originated in and to be connected with the work for which the deceased was employed, and that the injury was occasioned while the deceased was engaged in and about the furtherance of such work, therefore, the issue of proximate cause becomes immaterial, and the court correctly predicated his judgment upon the other answers noted. This is a plausible argument, but entirely specious. The answers last referred to could support a judgment only upon the construction that they constituted a finding that the injury was sustained by the deceased in the course of his employment and arose out of it, and implied a finding that the injury resulting from an act of God was caused by greater hazard put upon deceased by his employment than that to which the public generally was subject. If this construction be given to these answers, it is directly in conflict with the answer relating to proximate cause. In such answer there is likewise implied the finding that the deceased was subject to no such increased hazard.

It will be noted that the jury found the death in question occurred while deceased was working in the derrick. If the conditions or circumstances did not proximately contribute to Preslar's death, then, necessarily the performance of his duties did not increase the hazard to which he was subjected. To our minds the conclusion is irrefragable that the judgment of the court is not and cannot be sustained by the special verdict.

[4] It may be, as contended by appellees, that since the jury found the deceased's death was caused from overheat, no other conclusion of fact could be properly drawn from the evidence than that the deceased was subject to a greater hazard by reason of his employment than that suffered by the public generally, due to the undisputed fact that the public generally does not work at strenuous labor in the hot sun, unprotected from its rays, but if this contention be correct, which it is not necessary to decide, the trial court would be powerless to render judgment non obstante veredicto. Massie v. Hutcheson (Tex. Com. App.) 270 S. W. 544. And neither could this court affirm a judgment rendered notwithstanding the verdict, although the verdict was without evidence to support it.

[5] Appellees called two physicians to establish the cause of Preslar's death. The first, Dr. Shackelford, was called to attend the deceased, but arrived after his death. Dr. Shackelford was unable to give any opinion of any kind or character as to the cause, stating that he made no detailed examination, merely looked at the deceased, and had no idea as to whether his death was due to natural cause, sunstroke, heat prostration, or what. Dr. Payne was then called. He qualified and testified as an expert only, not having any actual knowledge of the case. Appellees propounded to him a hypothetical question embracing the facts and circumstances relied on by them, and in answer thereto the witness replied that he could not say definitely as to what was the cause of Preslar's death; that it could be either one of several causes; that it was most likely cerebral apoplexy, or heat stroke, or some form of heart disease. The witness further answered that either of the causes mentioned by him would constitute harm to the physical structure of the body. It is insisted by appellant that this evidence was the only testimony from which the jury could determine the cause of the death in question, and that they could not be more certain than the witness, and that their verdict could go no further than the testimony, and that the testimony was equally cogent to establish that apoplexy or heart disease was the cause of the death as heat stroke; that without the testimony of the doctor there is nothing in the evidence from which a lay mind could determine the cause of death; that it was further shown by Dr. Payne's testimony that a man of Preslar's age could be suffering from high blood pressure, which is frequently the cause of apoplexy, and not be aware of it and think he was in good health; that such a person could have an organic trouble with his heart, be apparently well, and not be aware of the fact that death was impending from organic heart trouble. The argument is convincing, the position apparently logical and supported to some extent by the decision in Fort Worth & Rio Grande Ry. Co. v. McMurray (Tex. Civ. App.) 173 S. W. 929, but the exact question was decided adversely to appellant's claim in the case of Texas Employers' Ins. Co. v. Moore, supra, where in passing upon a similar contention it was said:

"In arriving at the cause of the death, the jury were not limited to these opinions of the experts, but were privileged to and did take into account many outside considerations, so that, even if it could be said that such opinion evidence was as consistent with death from some other cause, the jury were still at liberty in weighing it with the other circumstances to say that heat stroke was the cause."

See, also, Gerogia Casualty Co. v. Little, supra.

The assignments relating to the matter under discussion are overruled.

[6, 7] It was permissible for physician after having had detailed to him the facts in evidence to testify as an expert what causes of death could or would result from such a state of facts. If the question erroneously omitted the fact of the use of ice water, this error was cured by the cross-examination in which the witness' attention was called to the fact that Preslar drank ice water a short time before he was stricken, and Dr. Payne stated that this did not change his opinion. Cassell et al. v. Rochester, supra, and Ins. Co. v. Moore, supra.

In view of the fact that these is a probable conflict in the answers of the jury involving the question of the hazard which Preslar's employment subjected him to as being greater than that suffered by the general public, the judgment of the trial court is reversed and the cause remanded.

HICKMAN, J. (dissenting in part). I concur in the disposition made of this case, but cannot agree with my associates on one important holding. This question may not arise in this case again, as the evidence may be different upon another trial, but, since it may arise many times in other cases, I desire to express my views concerning it.

I cannot agree that the evidence in this case was sufficient to warrant the finding by the jury that the death of the deceased was caused by overheat. Appellees called two physicians to the stand as their witnesses to establish the cause of the death of the deceased. To each of these witnesses they propounded a hypothetical question detailing at length, in the light most favorable to their theory of its cause, all the facts and circumstances surrounding this death. In placing these witnesses upon the stand they vouched not only for their credibility, but for their qualifications to speak on this purely scientific question. One of the witnesses, Dr. Shackelford, would not name any cause at all; but, on the contrary, stated that he could not tell what killed the man, and that he did not think anybody else could. This testimony was given on direct examination brought out by the appellees themselves. The other physician, Dr. Payne, testified in answer to the hypothetical question propounded by appellees as follows:

"I could not say definitely. It could be either one of several causes. I think most likely it was cerebral apoplexy, or heat stroke, or some form of heart disease."

On cross-examination, when pressed for a more definite conclusion, he testified:

"As to whether there is any choice between these as to what might be the most likely cause to have caused his death under the circumstances, I think it would be just about equal chances between cerebral apoplexy and heat stroke, and least likely to have been from heart lesion."

While it is the universal rule that jurors may disregard the opinions of experts, and courts generally hold that their testimony is not of the highest order of evidence, yet, in my opinion, the question in this case is not altogether one of the right of the jury to disregard the testimony of these physicians, but is rather a question of whether appellees discharged the burden resting upon them to prove that the death of the deceased was brought about by a cause for which appellant was liable. If these physicians, who were witnesses for appellees and for whom they vouched, rested the cause of the death of the deceased in pure conjecture, then, I am unable to arrive at any other conclusion than that the verdict of the jury as to the cause of this death likewise rested in pure conjecture. The verdict of a jury must be based upon testimony in the record.

As this record comes before us, it seems to me that appellees introduced their evidence, and then proved by reliable experts of their own choosing that their evidence was insufficient. In this state of the record, as I view it, appellees' case is different from and much weaker than it would have been, had no physician been placed upon the stand.

The opinion of the majority recognizes that the logic of the situation is with the appellant, and that its contention has some support in the case of Fort Worth & Rio Grande Ry. Co. v. McMurray (Tex. Civ. App.) 173 S. W. 929, but bases the decision upon the ground that the exact question involved here was decided adversely to appellant in the case of Texas Employers' Ins. Ass'n v. Moore (Tex. Civ. App.) 279 S. W. 516. To my mind that case is clearly distinguishable from the case under consideration. In that case two doctors testified as experts, one of them being a pathologist, and the other an internist. The internist testified in answer to a hypothetical question:

"I would consider that he died from heat stroke under those conditions."

While the pathologist in reply to the hypothetical question testified that there were two conditions described in the question propounded which were found in heat prostration, yet there would not be enough for him to base a diagnosis upon, as he could only diagnose any case from pathological findings. As I view it, that testimony was materially different to the testimony in this case, and in no sense does it seem to me that the decision in that case is authority for the holding of the majority in this case.

The other case cited is the case of Georgia Casualty Co. v. Little (Tex. Civ. App.) 281 S. W. 1092. I do not regard it as an authority upon this question. In that case the doctor who testified as to the cause of the death of the deceased was the physician of the insurance company. His testimony was not altogether positive and emphatic, but he did testify that he thought the injuries sustained caused the death of the deceased indirectly. Had he testified that he could not tell and did not believe that any one else could tell what caused the death in that case, I believe a different decision would have been rendered in that case.

No useful purpose would be served by an exhaustive opinion on this question and citation of authorities, but, for the reasons indicated, I feel constrained to dissent respectfully from the views of my associates on the question discussed herein.