M. & W. Construction Co., et al. *v.* Bugg

No. 41830          May 1, 1961          129 So. 2d 631

*Cox & Dunn, Jackson,* for appellants.

*P. J. Townsend, Jr.,* Drew; *Watkins & Eager,* Jackson, for appellees.

136

RODGERS, J.

This is a workmen's compensation case. An order was entered in the Second Judicial District of Bolivar County, Mississippi, affirming the order entered in the Workmen's Compensation Commission awarding the dependent children and dependent widow of deceased Horace Victor Bugg death benefits as provided by Section 6998-13, Code of 1942, and from that order this case has been appealed to this Court.

Mr. Horace Victor Bugg, the husband and father of the dependent claimants, was found dead under his panel truck on the 4th day of March 1959, about 5 o'clock in the afternoon. He was employed by the M. & W. Construction Company as a mechanic, but when the Construction Company was closed down on December 12, 1958, he was employed to look after the road equipment then parked on property leased from Mr. James L. Maxwell. Mr. Bugg was living in the Maxwell house and was required to remain on the property on "24 hour duty". When the road equipment was first parked on the Maxwell

property Mr. Bugg was required to do some repair work on the road machinery. He had two men to help him, but the employer Mr. H. M. Whitfield directed that this work be closed down. The deceased was then required to crank the motors on the equipment, and run them to keep them in shape, and he was also required to drag the road at times. This work as watchman continued for some time until along about the middle of February 1959, when Mrs. Bugg testified Mr. Whitfield came to the Maxwell property at a time when Mrs. Bugg was there and wanted to know if there was anything to be done to the trucks. Mr. Bugg told him that the trucks needed some minor repairs such as fixing the brakes and Mr. Whitfield told Mr. Bugg to ''get to work on the trucks'' that if things worked out like he hoped, they would start back to work in two or three weeks. Mr. Whitfield, one of the partners of the M. & W. Construction Company, was asked about this conversation on the witness stand:- ''Q. But you wouldn't say you didn't say that? A. No Ma'am I wouldn't say that.'' Mr. Whitfield would not deny that he had seen the panel truck belonging to Mr. Bugg driven by Doc Gentry, and did not deny telling him to get the brakes fixed. Mr. Bugg had a panel truck that had unquestionably been used by him in furtherance of the master's business. He had used the truck to take his tools to heavy road equipment out on the road, and had time after time mended trucks on the road, by going to the disabled truck and taking his tools and parts with him in the panel truck. There is testimony by the defendants to the effect that the deceased had no authority to use his personal truck for the employer, but there is also sufficient testimony in this record to establish that there had been an understanding between the foreman for the M. & W. Construction Company, whereby parts were purchased for the repair of deceased's truck by the M. & W. Construction Company, and the testimony is sufficient to show that Mr. Bugg filled his panel truck with gas

and oil belonging to the employer so often as to indicate it was with the knowledge of the foreman of the M. & W. Construction Company. Moreover, this testimony is strengthened by the testimony of the foreman who admits that he did enter into an agreement with another employee and stated ''we didn't have but my truck down there, and we didn't have enough ways to go; and I talked to him and told him if he would let me use his car I would put gas in it.''

The appellant complains that the Workmen's Compensation Commission and the Circuit Judge committed error in awarding the dependents compensation for the following reasons: (1) The accident and resulting death of employee Bugg did not *arise out of* and *in the course of* Bugg's employment. (2) The activity out of which the accident arose was prohibited by M. & W. Construction Company and in any event was beyond the areas of risk assumed by the employer.

The appellant cites: Persons, et al. v. Stokes, 222 Miss. 479, 76 So. 2d 517, and Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 55 So. 2d 381, 59 So. 2d 294, as authority for the rule that ''If a servant steps aside from the master's business for some purpose of his own disconnected from his employment, the relationship of master and servant is temporarily suspended and this is so no matter how short the time, and the master is not liable for his acts during such time.''

It is the contention of the appellees that the M. & W. Construction Company did not authorize the use of the panel truck in the business of the M. & W. Construction Company, and therefore the repair of the panel truck did not ''arise out of'' his employment. It is also contended that the panel truck was a danger brought to the job by the employee and that employer was not liable for an injury caused by the panel truck, under the doctrine of imported danger, mentioned by this Court in Earnest v. Interstate Ins. Co., 238 Miss. 648, 119 So. 2d 782.

■■ Section 6998-4, Code of 1942, provides that compensation shall be payable for disability or death from injury "arising out of and in the course of employment". A compensable injury must, therefore, not only arise within the space and limits of the employment, but also in the course of an activity related to the employment.

■■ An activity, however, is related to the employment if it carries out the employer's purposes or advances his interest, directly or indirectly. It has been pointed out that if a servant under the common law "steps aside from the master's business for some purpose of his own, disconnected from his employment, the relationship of master and servant is temporarily suspended." Stovall v. Jepsen, 195 Miss. 115, 13 So. 2d 229; 58 Am. Jur., Workmen's Compensation, Section 211, pp. 718-721. This common-law rule has been used as a part of the workmen's compensation opinions in determining the meaning of the phrase "to arise out of the employment".

■■ An injury arises out of the employment when there is a casual connection between it and the job. Earnest v. Interstate Ins. Co., supra.

■■ When it has been shown that an employee is on duty for 24 hours or is a resident employee, the entire period of his presence is deemed included in the "course of his employment". See Section 24.00 of Larson's Workmen's Compensation, p. 372.

In 58 Am. Jur., Workmen's Compensation, Sec. 235, the textwriter points out that an injury is not necessarily rendered noncompensable by the fact at the time of its occurrence the employee was engaged in the performance of some act for the benefit of himself or some third person, since such an act may in many instances be so related to or connected with the employment as to make it a reasonable incident thereof.

■■ The appellant contends that the automobile belonging to the deceased was brought upon the leased premises of the employer and was therefore an imported

hazard and cites the cases of Persons v. Stokes, 222 Miss. 479, 76 So. 2d 517, and Earnest v. Interstate Ins. Co., 238 Miss. 648, 119 So. 2d 782. These cases were based on employees having transported deadly weapons to and upon the property of the employer. This Court pointed out the rule mentioned in Larson's Workmen's Compensation, Sec. 12.31, in the Earnest v. Interstate Ins. Co. case, supra. In the following Section 12.32 Mr. Larson says: "The principle is relatively easy to accept when the imported risk takes the form of an unequivocally 'dangerous instrumentality' ", but in tort law it is not long before the "dangerous instrumentality" category is extended to include automobiles. Mr. Larson points out that there are two lines of authority on the subject of an automobile as an imported danger, and says: "In choosing between these two lines of cases one should note that the heart of the issue is not really the dangerousness of the thing brought upon the premises, but the relation of that thing to the employment." This Court has held an automobile is not per se a dangerous instrumentality. Vicksburg Gas Co. v. Ferguson, 140 Miss. 543, 106 So. 258; Primos v. Gulfport Laundry & Cleaning Co., 157 Miss. 770, 128 So. 507. An automobile has become as much a necessity as an employee's tools and we prefer to adopt the holding of the courts that refuse to extend the "imported danger" to automobiles. Petroleum Casualty Co. v. Green, (Texas) 11 S. W. 2d 388; Federal Surety Co. v. Ragle, (Texas) 40 S. W. 2d 63; Employer's Liability Assur. Corp. v. Light, (Texas) 275 S. W. 685; Donehue v. Hubbard, 246 App. Div. 662, 283 N. Y. S. 259; Robert's Case, 124 Me. 129, 126 A. 573.

■■ The testimony in this case is not entirely satisfactory as to what the deceased was doing at the time his panel truck fell on him causing his death. It has been assumed by the witnesses for both the claimants and the defendants that the deceased Mr. Bugg was, at the time of his death, working on his panel truck. There is no

testimony that he had tools about him or that any part of the underside of the panel truck had been changed or repaired. Moreover, the testimony from the doctor indicates that this man died between 5:00 and 5:30 o'clock, which would have been in the late afternoon at a time when the light was certainly fading in a shop under an automobile. We cannot therefore be certain as to what caused the death of the employee Bugg.

Mr. Larson in his work on Workmen's Compensation Law, Section 10.32, p. 101, has this to say: ''When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death most courts will indulge a presumption or inference that the death arose out of the employment.''

■■ Our Court has adopted the presumption that where a claimant is found dead on the premises of an employer or where he is required to work, and it is evident that he has been killed during working hours, it will be presumed that the accident arose out of and in the course of his employment. And if there has been a deviation there is a presumption that the employee had returned to his duties at the time of his death. See Vestal & Vernon Agency v. Pittman, 219 Miss. 570, 69 So. 2d 227; Mills v. Jones Estate, 213 Miss. 680, 56 So. 2d 488; Eagle Motor Lines v. Mitchell, 223 Miss. 398, 78 So. 2d 482; Bryan Bros. Packing Co. v. Dependents of Murrah, 234 Miss. 494, 106 So. 2d 675; Retail Credit Co. v. Coleman, 227 Miss. 791, 86 So. 2d 666.

■■ In order to render an injury and death noncompensable on the ground that an employee working for the master had deviated from his duties, the testimony must be sufficient to constitute an abandonment and a mere deviation or departure by a servant from a strict course of duty, although for a purpose of his own, does not in and of itself constitute such a departure from

the master's business as to relieve a master from liability for the servant's act on the ground that the servant has deviated from his service. See Colotta v. Phillips, 226 Miss. 870, 85 So. 2d 574; 57 C. J. S., Master and Servant, Section 574(d), pp. 327, 328; Whittemore Bros. Corp. v. DeGrandpre, 202 Miss. 190, 30 So. 2d 896.

The deceased was clearly on duty at the time he lost his life under the 24 hour rule above mentioned and we think there is sufficient testimony to show that if the deceased was in fact working on his truck at the time of his death, his work was so related and connected with his employment as to be compensable. Waters v. Service Oil Co., (Conn.) 44 A. 2d 709; Fels v. Industrial Comm., (Wis.) 69 N. W. 2d 225; Grina v. Stenerson Bros. Lbr. Co., (Minn.) 248 N. W. 732; Argroe v. Marinaccio, (N. J.) 164 A. 2d 809; Kingsley v. Donovan, 155 N. Y. S. 801; Derleth v. Roach, etc. Co., (Mich.) 198 N. W. 948; Kimberly-Clark Co. v. Industrial Comm., (Wis.) 203 N. W. 737.

█ █ The testimony introduced by employer for the purpose of showing that the deceased employee Bugg intended to sell his panel truck to Mr. Clinton Robinson is less than convincing, and the only other reason the deceased could have had to repair his panel truck was to use it. Moreover, since the weight of the testimony shows he had been using it in furtherance of his master's business, - if we assumed he was working under his automobile a short time before dark - then we must conclude employee was getting it "ready to roll" to aid him as a tool in furtherance of his master's business. The testimony for claimants had therefore made out a prima facie case, since it was admitted that deceased Mr. Bugg was a resident employee on 24 hour duty, - not only as to "arising out of " but also "in the course of employment". It then became the burden of the employer to establish his defense that employee Bugg had "stepped aside" from his duty to his employer and temporarily

abandoned the course of his employment. Bourgeois v. Miss. School Supply Co., 170 Miss. 310, 155 So. 209, and cases there cited.

The Workmen's Compensation Commission and the Circuit Court held the dependent claimants to be entitled to death benefits under the facts in this case, and we are of the opinion the correct result was obtained. The order of the Workmen's Compensation Commission and the Circuit Court will therefore be affirmed.

Affirmed.

*Lee, P. J., Arrington, Ethridge* and *McElroy, JJ.,* concur.